UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

OCCUPY BUFFALO, through its member-base,
including but not limited to LISA RICHARDSON,
HERON SIMMONDS-PRICE, JOHN ROSZMAN,
DANA GERACE, *et al.*

                  Plaintiffs,

v.

THE CITY OF BUFFALO, BYRON BROWN,
in his official capacity as Mayor of the City of
Buffalo, DANIEL DERENDA, in his official
capacity as the Police Chief, MICHAEL DEGEORGE,
in his official capacity as Director of Communications,
and other presently unidentified officials, employees
and/or agents of the City of Buffalo in their official
and individual capacities, JOHN DOE and  RICHARD
ROE, *et al*. and other presently unidentified Local,
State or Federal officials or agents.

                  Defendants.
_____

**<u>COMPLAINT</u>**

JURY TRIAL DEMANDED

       Plaintiffs OCCUPY BUFFALO, *et al*. by their attorney Daire Brian Irwin, as and

for their COMPLAINT against Defendants, allege the following:

**<u>PRELIMINARY STATEMENT</u>**

       1.     This is a Civil Rights Action in which the Plaintiffs seeks relief for the

Defendants' violation of the rights secured by 42 U.S.C. § 1983 and 1985 (3), the First, Fourth,

Eighth and Fourteenth Amendments to the United States Constitution and the laws and

Constitution of the State of New York.  Plaintiffs were deprived of their federal and state

constitutional and New York State common law rights when police officers of the Buffalo Police

Department ("BPD") and various other City, State, and Federal workers (collectively "City

Departments"), acting pursuant to a policy and on the authority of the City of Buffalo Mayor Byron Brown and under the direction of Police Chief Daniel Derenda, conducted a highly-coordinated, surprise, night-time raid of Niagara Square.

2.      As a part of the raid, the City Departments seized and retained possession of property belonging to Occupy Buffalo, including tents, sleeping bags, a large collection of books, arts and crafts materials, two large party tents, tables, chairs, food, and various additional personal items.  The items were destroyed by bulldozers and various other pieces of heavy machinery and transported to the City Sanitation Department where, with the exception of a few items, they were deposited into one large and unnavigable pile of mangled debris.

## JURISDICTION AND VENUE

3.      Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 2 as if fully set forth herein.

4.      This action is brought pursuant to 42 U.S.C. § 1983, 1988 and 1985 (3), the First, Fourth, Eight and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.  Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. § 1331, 1343(a)(3), 1343(a)(4), and 1367 as this is a civil action arising under the Constitution of the United States and the laws of the United States.  This Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper pursuant to 28 U.S.C. § 2201 and 2202.  This Court has jurisdiction over the supplemental claims arising under New York State law pursuant to 28 U.S.C. § 1367(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a), (b), and (c) because the claim arose in this district.

## PARTIES

6.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 5 as if fully set forth herein.

7.     Plaintiff, OCCUPY BUFFALO, is a non-profit organization incorporated under the laws of the State of New York.  OCCUPY BUFFALO is a non-hierarchical organization comprised of individuals interested in creating a more economically and politically just City of Buffalo and United States.  People of various genders, ages, educational backgrounds, races and ethnicities, religions, socioeconomic backgrounds, and political affiliations are associated with OCCUPY BUFFALO.

8.     A central tenet of the Occupy movement is that the growing income inequality in the United States is unjust, exerts tremendous harm on a great majority the population of our country, and will be best addressed by the 99% of the population, who are regularly and directly affected by this inequity, speaking out with one voice.  At its core, this inequality creates impenetrable classes of people in the United States, a class of super-wealthy individuals who reap tremendous benefits from the United States' current socio-political model, and a class of the remaining 99% of people who are harmed by the same model. Members of the Occupy movement seek to begin rectifying this inequality by petitioning the government to redress connected grievances, and through demonstrations and direct action in Buffalo and throughout the country.

9.     Defendant, CITY OF BUFFALO, is a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain police and various other departments, which act as its agents in the areas of law enforcement and in various other capacities.

10.     Defendant BYRON BROWN is the Mayor of the City of Buffalo.  The Mayor is the chief executive officer of the City of Buffalo.  Buffalo City Charter, Art. 4. §4-1.  As such, he is responsible for the actions and policies of the BPD, and the effectiveness and integrity of the City's government operations.  Id.  Pursuant to the Buffalo City Charter, he must enforce such laws as are necessary and appropriate to ensure that said actions, policies, and operations are faithfully performed.  Id.  He is sued in his official capacity.

11     Defendant DANIEL DERENDA is the BPD Police Chief.  He is appointed by the Mayor and is the chief executive officer of the BPD.  Among other duties, Chief Derenda is responsible for the actions and policies of the BPD, and for the execution of all the laws and the rules and regulations of the State, the City and the BPD.  He is sued in his official capacity.

12.     Defendants JOHN DOE and RICHARD ROE, et al., whose identities are presently unknown to Plaintiffs, are and were at all times officials, employees and/or agents of the City Departments, State and Federal agencies.  They are sued in their official capacities and, with respect to the claim for punitive damages, in their individual capacities.

13.     Except as to the actions that form the basis for the claim for punitive damages as to JOHN DOE and RICHARD ROE, et al., at all times relevant, the individual defendants JOHN DOE and RICHARD ROE, et al., were acting under the color of state law in the course and scope of their duties and functions as officials, employees and/or agents of the City Departments, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.

## STATEMENT OF FACTS

14.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 13 as if fully set forth herein.

15.     In early October, 2011, in solidarity with other Occupy establishments throughout the country, several individuals established a round-the-clock encampment in Niagara Square, a publicly held space in Downtown Buffalo.  The encampment began with several personal tents being erected in the southeast quadrant of the square.  Soon afterwards, the occupation expanded to two additional quadrants, and the group was flooded with generous donations of food, books, tables, chairs, tents, clothing, art supplies, basic medical supplies, and a plethora of other items supplied by Buffalonians supportive of the Occupy movement's goals and activities.  The donated items were organized and stored in the two party tents located in the southeast quadrant.

16.     The tents also served as meeting places where all organizing committees met, educational workshops were held, and Occupy members were able to interact with one another and with the broader public.

17.     The donated items were carefully sorted, organized and utilized by the members of Occupy Buffalo who remained at the encampment site and the items were offered, free of charge, to any individual who requested them.

18.     Upon information and belief, some 50 individuals, on average, took up permanent residence at the encampment, and their personal belongings, in addition to the donated items, were all destroyed in the raid described below.

**The February 2nd Raid and Attempted Retrieval of Property**

19.     On February 2, 2012, at approximately 1:30 a.m., the Buffalo Police Department, accompanied by a number of governmental officials, arrived at Niagara Square.  Hours earlier, Occupy members had rejected an attempt by the CITY OF BUFFALO to re-write a valid and enforceable contract between OCCUPY BUFFALO and THE CITY OF BUFFALO with respect to OCCUPY BUFFALO's on-going occupation of Niagara Square.

20.     In addition to radically changing the terms of the contract between OCCUPY BUFFALO and THE CITY OF BUFFALO, the contract was presented to the members at approximately 6:00 p.m. on the evening of February 1, 2013. THE CITY OF BUFFALO was fully aware of the nature of OCCUPY BUFFALO's decision-making body, "The General Assembly", and the requirements of consensus-based decision-making, which rendered the group incapable of completely reversing the terms of their encampment with 100% member-approval in five hours.

21.     In rejecting the CITY OF BUFFALO's flagrant attempt to re-write the contract, members of OCCUPY BUFFALO believed that the CITY OF BUFFALO would return to the negotiating table in the morning to continue discussions, primarily as a result of the outstanding relationship that OCCUPY BUFFALO had painstakingly maintained with the CITY OF BUFFALO by immediately complying with the CITY OF BUFFALO's every request.

22.     As a result, members of OCCUPY BUFFALO remaining in Niagara Square following the group's rejection of the CITY OF BUFFALO's new contract, were shocked and dismayed when confronted at roughly 1:30 a.m. by Police Chief Daniel Derenda, who indicated to the occupiers that they needed to appoint a leader who could act as a liaison between members of OCCUPY BUFFALO and the BPD.

23.     Chief Derenda indicated to the group that their tents, personal items, and the plethora of items in the square at that time would be collected up by the officers and would be made available to their owners in the morning.

24.     Members of OCCUPY BUFFALO inquired about, at minimum, removing their personal items from Niagara Square.  They were assured by various John Does and Richard Roes

present in Niagara Square that they would be afforded an opportunity to retrieve their personal items following an "inventory" of the contents of the encampment.

25.     Upon information and belief, at no time were any members of OCCUPY BUFFALO afforded any opportunity to retrieve personal items during the raid on the encampment, even following said "inventory".

26.     One member of OCCUPY BUFFALO attempted to move his tent across the street to a police designated "safe zone," only to have his personal items picked up by an excavator that nearly struck a number of on-lookers, and summarily deposited into a dump-truck.

27.     Chief Derenda also communicated to the group that OCCUPY BUFFALO members who remained in Niagara Square would be arrested, and those who did not would not risk arrest.   A large SWAT unit and a militarized tank were also present during the initial confrontation.   These items were redundant and intended solely to intimidate Occupy members, given the four prior months of peaceful protest undertaken by members of OCCUPY BUFFALO. The police response had a marked chilling effect on the first amendment rights of the individuals present in the square that evening.

28.     Upon information and belief, Mayor Brown authorized and assumed ultimate responsibility for the raid.   Moreover, the raid was a part of a coordinated, national effort to discredit and then destroy what had always been a peaceful movement.   OCCUPY BUFFALO's continued presence in Niagara Square in tandem with the presence of other Occupy encampments throughout the United States changed the national discourse about wealth inequality, and threatened the institutions that maintained said inequality.   As such Federal, State and Local agencies worked together to ensure that despite its peaceful methods, the Occupy Movement would not be successful in its attempts to peacefully dismantle those institutions.

29.     Prior to the raid on February 2, 2012, no notice was given to OCCUPY BUFFALO or its associates that all the items located in Niagara Square would have to be removed, in contravention of the signed contract between the CITY OF BUFFALO and OCCUPY BUFFALO.

30.     Prior to seizing the items, Defendants did not provide a hearing or any other pre-deprivation procedure.

31.     Upon information and belief, no emergency situation existed at the Park at or about 1:30 a.m. on February 1st.

32.     The presence of these items in Niagara Square on February 1st did not create an emergency condition that required their immediate removal.

33.     Prior to February 2, 2012, BPD officers were continually monitoring the condition of Niagara Square, and had the opportunity to observe the items located in Niagara Square.  Upon information and belief, members of the BPD were aware that there were a substantial number of items contained within the camp, and the BPD knew or should have known that, under the circumstances on the night of the raid, it would not be possible to remove such a large quantity of items within the time allotted by the Defendants.

34.     On February 3, 2012, the day after the raid, members of OCCUPY BUFFALO were contacted by THE CITY OF BUFFALO and told to go to 1120 Seneca Street in the city of Buffalo to "retrieve" the items that had been confiscated the night before.

35.     Over the course of the next several days, members of OCCUPY BUFFALO proceeded to the aforementioned location in an attempt to retrieve their belongings. With the exception of a few sleeping bags, all of the items that had been confiscated by THE CITY OF BUFFALO were completely destroyed and heaped into a single pile of unnavigable debris.

36.     During a General Assembly meeting approximately 1 month following the raid, the members of OCCUPY BUFFALO compiled a list of items known to them to have been destroyed during the raid.  The group estimates the costs of these items to exceed $15,000.

37.     As a result of Defendants' conduct, the members of OCCUPY BUFFALO lost a substantial amount of member's belongings and valuable donated items.

38.     Defendants failed to train and supervise their officials, employees and agents, including John Doe and Richard Roe, *et al*., so as to prevent the seizure and destruction of Plaintiffs' property, which resulted in the violation of the First, Fourth, Eighth, Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983 and § 1985(3), and the Constitution and laws of New York State.

39.     Defendants' failure to train and supervise amounts to deliberate indifference to the rights of persons with whom Defendants came into contact, including Plaintiffs.

40.     The deficiency in the training and supervision of Defendants John Doe and Richard Roe *et al*. was an actual cause of the deprivation of Plaintiffs' rights and injuries.

41.     On April 30, 2012, a notice of claim was served on the CITY OF BUFFALO.  At least 30 days have elapsed since service of such notice, and adjustment and/or payment has been neglected and/or refused.

42.     In taking the actions described above, the Defendants were acting under color of state law.

## FIRST CLAIM FOR RELIEF

43.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 42 as if fully set forth herein.

44.     Defendants' seizure of all the property located in Niagara Square constitutes an unreasonable seizure in violation of the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983 and § 1985(3).  These actions were taken pursuant to a policy, and the decision to take such actions was made by high ranking officials of the CITY OF BUFFALO.

45.     Defendants' destruction and failure to return or return in a usable condition OCCUPY BUFFALO's materials and the materials of each of OCCUPY BUFFALO's members constitutes an unreasonable seizure in violation of the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983 and § 1985(3).  These actions were taken pursuant to a policy, and the decision to take such actions was made by high ranking officials of the CITY OF BUFFALO.

**SECOND CLAIM FOR RELIEF**

46.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 45 as if fully set forth herein.

47.     Plaintiffs have a property right in the items donated to OCCUPY BUFFALO including two party tents, food, books, medical equipment, winter weather gear, arts supplies, tables, chairs, and various other items.

48.     Defendants' actions in (i) failing to provide a hearing or any other pre-deprivation procedure prior to seizing the items, and/or (ii) permitting OCCUPY BUFFALO's members an unreasonably short deadline to vacate Niagara Square with all of OCCUPY BUFFALO's possessions deprived OCCUPY BUFFALO of its property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983 and § 1985(3).  These actions were taken pursuant to a policy, and the decision to take such actions was made by high ranking officials of the CITY OF BUFFALO.

49.     Additionally, Defendants' actions in failing to return all of OCCUPY BUFFALO's property, or in failing to return the items in a usable condition deprived Plaintiffs of its property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983  and § 1985(3).

### THIRD CLAIM FOR RELIEF

50.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 49 as if fully set forth herein.

51.     In seizing, destroying and/or not returning the items, or not returning them in a usable condition, defendants destroyed OCCUPY BUFFALO's forum for learning and the exchange of ideas, and otherwise interfered with OCCUY BUFFALO's members' ability to obtain and share information.

52.     The excessive response to a long-standing and peaceful protest resulted in a palpable chilling effect on the First Amendment rights of both the individuals present at the square that evening, and of citizens who might have otherwise joined the ranks of OCCUPY BUFFALO, but for fear of excessive police response to the presence of OCCUPY BUFFALO members.

53.     The encampment presented no danger to the Defendants or to the public that necessitated the removal and then destruction and/or failure to return the items, or failure to return the items in a usable condition.  Defendants did not use the requisite care in dismantling the encampment, taking possession of the items, or in ensuring their return.  Accordingly, Defendants acted with reckless and callous indifference to Plaintiffs' rights under the First Amendment to the Constitution of the United States and 42 U.S.C. § 1983  and § 1985(3).

## FOURTH CLAIM FOR RELIEF

54.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 53 as if fully set forth herein.

55.     In responding with a tremendous showing of force during the clearing of the OCCUPY BUFFALO encampment, the BPD violated the Eight Amendment Rights to be free from excessive and cruel punishment.

56.     The protests and protestors had remained in Niagara Square for four months prior to the eviction without incident.  The BPD and all other governmental agencies knew or should have known that OCCUPY BUFFALO posed no threat to any of the officers or officials present that night.   Moreover, the likely presence of individuals who had previously experienced significant trauma at the hands of law enforcement required that the BPD take appropriate steps so as to not re-traumatize said individuals through an unnecessary and terrifying show of force.

57.     Accordingly, Defendants acted with reckless and callous indifference to Plaintiffs' rights under the Eighth Amendment to the Constitution of the United States and 42 U.S.C. § 1983  and § 1985(3).

## FIFTH CLAIM FOR RELIEF

58.      Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 57 as if fully set forth herein.

59.     Defendants failed to train and supervise their officials, employees and agents, including John Doe and Richard Roe *et al*., so as to prevent the seizures and destruction of Plaintiffs' property, which resulted in the violation of the First, Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983  and § 1985(3).

60.      Defendants' failure to train and supervise amounts to deliberate indifference to the rights of persons with whom Defendants came into contact, including Plaintiffs.

61.      The deficiency in the training and supervision of Defendants John Doe and Richard Roe *et al*. was an actual cause of the constitutional deprivations and injuries suffered by Plaintiffs.

## SIXTH CLAIM FOR RELIEF

62.      Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 61 as if fully set forth herein.

63.      Defendants violated Plaintiffs' rights under Article 1, Section 8 of the New York State Constitution.

## SEVENTH CLAIM FOR RELIEF

64.      Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 63 as if fully set forth herein.

65.      Defendants violated Plaintiffs' rights under Article 1, Section 12 of the New York State Constitution.

## EIGHTH CLAIM FOR RELIEF

66.      Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 65 as if fully set forth herein.

67.      Defendants violated Plaintiffs' rights under Article 1, Section 6 of the New York State Constitution.

## NINTH CLAIM FOR RELIEF

68.      Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 67 as if fully set forth herein.

69.     The Plaintiffs have title and/or the right to possess the items listed above. Defendants' actions in seizing the items, and/or failing to return the items or failing to return them in a usable condition when Plaintiffs requested their return, constitutes conversion. Plaintiffs are damaged as a result of Defendants' actions.

70.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## TENTH CLAIM FOR RELIEF

71.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 70 as if fully set forth herein.

72.     The Plaintiffs has title and/or the right to possess the items listed above. Defendants' actions in seizing the items, and/or failing to return them or failing to return them in a usable condition when Plaintiffs requested their return, supports a claim for replevin relief.

73.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## ELEVENTH CLAIM FOR RELIEF

74.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 73 as if fully set forth herein.

75.     The damage, destruction and/or failure to return the items was foreseeable and proximately caused by the negligence, gross negligence, carelessness and/or negligent omissions of Defendants or their officials, employees and/or agents.

76.     As a result of the negligence, gross negligence, carelessness and/or negligent omissions of Defendants, their officials, employees and/or agents, Plaintiffs have sustained monetary damages.

77.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## TWELFTH CLAIM FOR RELIEF

78.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 77 as if fully set forth herein.

79.     THE CITY OF BUFFALO and its officials, employees and/or agents acting within the scope of their employment negligently supervised and trained the individual Defendants, who were unfit for the performance of their duties at Niagara Square on February 2, 2012, thereby causing OCCUPY BUFFALO to suffer injury, including monetary damages.  Such injures and damages were foreseeable.

80.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## DEMAND FOR A JURY TRIAL

81.     Plaintiffs demand a jury trial.

## PRAYER FOR RELIEF

Wherefore, the Plaintiffs request the following relief:

1.   A declaratory judgment that Defendants violated Plaintiffs' rights under the First, Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983  and § 1985(3), and Article 1, Sections 6, 8, and 12 of the New York State Constitution.

2.   Damages in the amount of at least approximately $15,000 against the CITY OF BUFFALO and the individual defendants, jointly and severally, together with interest and costs.

3.  Punitive damages in an amount of at least $1,000 against the individual defendants John Doe and Richard Roe et al. whose actions constituted outrageous conduct, were reckless, and showed a callous indifference to and willful disregard of Plaintiffs' rights as set forth above.

4.  The cost of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

5.  Any further and different relief that this Court deems just and proper.


Dated: Buffalo, NY
　　　　April 23, 2013

                              Respectfully submitted,


                              /s/ Daire Brian Irwin_____
                              DAIRE BRIAN IRWIN, ESQ.
                              210 Voorhees Street
                              Buffalo, NY 14214
                              (716) 822-7645
                              dbi59@roadrunner.com